Good morning. Good morning. May it please the court, Grace Delora appearing for Petitioner Gregory Brown. I'd like to reserve two minutes. Thank you. I'd like to start with Panetti and with Magwood. Panetti announced an exception to the second or successive standard for claims that were not ripe. Magwood, with its seven-justice combined opinion, tells us that there are two separate categories of claims that are not second or successive. They tell us one set is claims that were not ripe. It cites Panetti. It also tells us that claims that did not exist at the time of the Petitioner's first petition also are not second or successive. It points us, then, to parole denials, issues where a Petitioner has not even had an opportunity to have the claim come into being. So we know that these two things both should not be treated as second or successive. The question then becomes, what is a ripe claim? When does a claim become ripe? Brady claims don't ripen until a Petitioner is on notice. That's consistent with the purposes of AEDPA. It's consistent with the abuse of the writ doctrine. They don't really have a case on that. We don't, Your Honor. Very few cases actually. So that's what we're asked to decide here, when they do, when does a Brady claim ripen? Yes, Your Honor. That is presented in this case. I think I quoted some dicta on one that at the latest would be you would argue that that would mean when the person gets knowledge, right? Yes, Your Honor, from Gage. Gage tells us that the Petitioner's ineffective assistance of counsel claim ripened at trial. That's consistent with Bronrostro, which also said that an ineffective assistance claim ripened at trial. Gage specifically speaks differently about the Brady claim. The Court says the Brady claim ripened at the latest, as Your Honor indicated, when the Petitioner heard after trial at his new trial hearing about the possibility of this evidence. So Gage treats these two things very differently. And then, of course, as was indicated in the prior case, Mr. Gage actually had notice at the time of his first habeas petition. So his claim was long since ripe and he was foreclosed. Now, why doesn't the text of 2244 preclude your argument? Your Honor, the text of 2244 has sort of an intuitive temptation to treat it as specifically designed to talk about Brady claims, but it's not. The text first and most importantly says a second or successive petition. And that hearkens back to the history of this case law, which says that once a petition is second or successive, we talk about whether or not it can be excused. Previously, that was under the abuse of the writ doctrine. Now it's under AEDPA. But there is a whole analysis that goes into whether or not a petition is second or successive. It depends on whether or not the claim is ripe. It depends on the status of the first petition. And the contours of that analysis can change depending on the nature of the claim that's being brought. So is there a constitutional concern with deeming second-in-time petitions alleged in Brady claims to be second or successive? And if yes, how do you square that answer with the Supreme Court's decision in Felker v. Turpin, where the Supreme Court upheld the constitutionality of 2244B? Your Honor, Felker v. Turpin absolutely does say that the concept of the second or successive standard, the sort of ratcheting up of review that comes with AEDPA,  However, there are times when that analysis could be applied in a way that has an unconstitutional result. So we see that discussion, for example, in the Martinez v. Areal Ninth Circuit opinion. The problem when you talk about Brady claims is that the nature of the claim implicates much more serious concerns. We're talking about suppression, which could be negligent, but could be intentional, that withholds evidence from a petitioner. And so you're cutting off a very wide swath of meritorious claims. Well, but you always have the safety valve of being able to show actual innocence. I mean, that's apart from this, that, I mean, just, you know, I mean, looking from the standpoint that, I mean, clearly we don't want actually innocent people to be convicted of crimes. And that there's always, if you can schlup your way through that, then you, you know, you still get before a court, right? The statute does contemplate that some claims might still survive. Of course, the standard is quite severe. And we do see potential issues with cases like Douglas v. Workman, where sort of the vagaries of litigation run the risk that petitioners will be prevented from vindicating very righteous claims, even despite that standard. And that really Oh, I'm sorry, Your Honor. Oh, no, I interrupted you. Go ahead. That really, I think, implicates why Brady claims are so unique. They're, I think, among the only types of claims where we see a State that's in possession of evidence, that is in a stronger position to defend its own conviction than a petitioner is. In the vast majority of other situations, we see a petitioner who is at least equally well situated with access and diligence to get to the evidence, but in many cases actually better suited, as in the case of an ineffective assistance claim. So you would have to say that a Brady claim can never be a second or successive? Well, you could have a claim like Mr. Gage's claim. So if you know of your Brady evidence at the time of your first petition and you failed to bring it, then you are second or successive. And if you cannot meet the standard, which Mr. Gage could not, your claim will fail. Do I understand that the government doesn't challenge that Brown was diligent? That is my understanding, based on their answering brief, yes. Okay. So you have, if we kind of go to the evidence that we're talking about here, I don't want you to disclose anything that is, there's a protective order on some of these because we're talking personnel files, but I think. Yes, Your Honor. But what's your best authority for the proposition that the evidence of charges against police officers unrelated to the type of case at bar is proper impeachment evidence? Because I think two out of the three officers didn't even testify at the trial, right? That is true. And they're very unrelated situations that come about. So what's your best authority that it would even be relevant? I would offer, Your Honor, two cases. One, and potentially three. Milk v. Ryan is an excellent case on impeachment evidence. In that case, the facts were slightly different. So the officer actually testified about what had happened in an interview with the defendant. And so his credibility was more directly implicated. We also see Aguilar v. Woodford, which is a direct habeas petition in which the impeachment evidence was actually about a dog sniff. And in Aguilar, the question was that the quality of the evidence about the dog sniff would have provided substantial ammunition for the defense to challenge the conviction in light of the rest of the evidence in the record, even though there was eyewitness testimony by multiple witnesses. So when you take this evidence in the context of the whole record, particularly in a case where there were substantial questions about the quality of the investigation, then you see a real opportunity for Mr. Brown's counsel to poke holes and question the competence of the investigation from the very beginning. Okay. You're getting close to two minutes. I don't know if you want to reserve your time. I would like to reserve my time, Your Honor. I will indicate that if there is additional evidence about the two officers whose criminal histories we became aware of in their personnel files, we don't know if there is, and we have not yet had access to it because we have not had discovery in the district court. Thank you. Thank you. Good morning. Gregory Ott for Respondent. May it please the Court. Brady claims fit squarely into 2244B. It is the only claim that I can think of that, by definition, is it fits into 2244B2B. Every Brady claim fits that. Well, I mean, there's just ordinary newly discovered evidence, isn't there, that wasn't withheld by the government? Yes, but I'm saying the elements of a Brady claim are, meet this, every Brady claim. Okay. I misunderstood your statement. I thought you were saying that the only thing that fits in this is a Brady claim. No. No, you're right. Okay. All right. Thank you.  So in the Venn diagram, the Brady claim is inside 2244B. That's right, Your Honor. And my point is that Congress did not overlook Brady claims in writing this statute. It's one of the first things you think of when you read this definition. And so I think the Congressional intent is very clear. As far as Judge Rustani, you asked about what else there is to show their intent. I don't have any Congressional history with me, nor have I looked at it. However, we know that the Congress intended to promote finality. And they've done that in a variety of ways. And cutting off Brady claims but leaving the safety net of actual innocence is one way that that is accomplished. The same with the statute of limitations and the actual innocence exception. So how do you sort of harmonize two Ninth Circuit cases, Gage and Juan Rostow, and then you've got Megwood? How do you harmonize all of those cases in terms of when the Brady claim becomes ripe? Well, let's talk about this Court's cases first. Juan Rostow sets forth the distinction about existence versus discovery and essentially follows 2244B2B. Gage uses muddled language. It says at one point, the factual predicate developed when the Court mentioned the material. About a page later, it says, it described that incident and says, that's when it became known to him. But I think the more important aspect of that case that shows what they meant was the paragraph right before they talk about developing predicate. And that's where they lay out Juan Rostow's distinction. Facts that existed but weren't discovered and facts that didn't exist until later. And then they apply this Brady claim through 2244B. I think that that, well, let me back up. The developed language is muddled, but I think if you read the opinion, it's clear that they're not saying that that's when it became ripe. Based on the following of Juan Rostow and especially reciting that distinction between facts that existed and facts that were discovered. Magwood, I don't recall the context of the statement that was recited, but it can't mean what it says. And here's why. One is the majority rejected a claim-based analysis in that case. So the argument that, well, he couldn't have raised this claim, the analysis there was that the majority adopted was a petition-based analysis. And frankly, any comment about whether he could have raised it is dictative because the ultimate decision in this case is based on a separate judgment. A whole separate petition and challenging a separate judgment. That's how the case was resolved. The other thing is that comment really restates the abuse of the writ doctrine. And the Supreme Court and this Court have made clear that the abuse of the writ and 2244 are not coextensive. 2244 restricted, the abuse of the writ informs 2244, but 2244 restricted the abuse of the writ doctrine. So to state that that couldn't be what they meant by saying that. Because they've said otherwise, something different. Well, let's talk about whether Brown's entitled to permission under 2244B to file a second or successive, if we get to that. Now, the evidence against Brown at trial could be termed circumstantial for purposes of showing actual innocence by clear and convincing evidence under 2244B. Is there a proportional relationship between the strength of the alleged Brady evidence and the strength of the evidence presented at trial? Put another way, the weaker the case, the weaker the Brady evidence needs to be to satisfy the 2244B. Well, I suppose just as a matter of logic, it would. However, the circumstantial evidence in this case, I would say, is very strong. Mr. Brown had a motive. Williams had given a statement to police. She was going to testify against him. He had personally, with Fain, given her a note threatening her and threatening her silence, threatening her to remain silent. He personally told her he did not want to testify. And then the timing of the shooting, three days before the prelim in which she was to testify, then Diggs and Fain's statements, inconsistent, not credible. Diggs and Fain's convictions are conclusively valid here. Their involvement can't really be questioned at this point. In fact, Mr. Diggs is deceased and Fain is out of custody and their convictions and involvement are final as a matter of law. So to suggest that they had nothing to do with this. And then the coincidence that Mr. Diggs is walking behind Ms. Williams, Fain is to the side, and all of a sudden she's shot in the back of the head is pretty indicative, I would say. And so the circumstantial evidence is very strong. Now, by underlining the circumstantial evidence that was strong, you're saying that there's no eyewitness testimony and no forensic testimony. Linking Mr. Brown? Yeah. No, in fact, I don't think that there was. No, there wasn't, or no, yes, there was not? Yes, there was not, Your Honor. And there wasn't an argument at trial that Brown was present. So he's linked by a conspiracy that, generally speaking, that he got Fain and Diggs to do this for him. Now, on the other hand, we have Mr. Ginn. His conduct, which I won't detail for the reasons that have been explained, was de minimis. He had no contact with the victim or any of the defendants. He did not investigate this case, had no role in investigating it. He really was put on for historical fact, which is he was, he and his partner were the first to show up at the scene. They set up, they cordoned off the area, interviewed a couple of witnesses. Those witnesses said nothing of import to either party. There were passengers on the bus. In fact, all they described was seeing the victim out the window lying in the street. Two other witnesses who saw a possible suspect in the distance, that was incorporated into his report. That was the report of another officer, and those two, that officer and those people testified at trial, not inconsistently with the report. There is simply nothing here but a witness testifying to historical fact. And, yes, there's impeachable evidence there, but one act was not going to change his, his, the import of his testimony, much less the. Can I go back to the basic statutory question here? Okay. Suppose you have a case with real Brady evidence, real exculpatory evidence. And, okay, now this, now we're not submitting that the government has done wrong and withheld it. And now we're going to flip the burden of proof and say government did wrong, government withheld it, but you, defendant, don't get a shot unless you can show by clear and convincing evidence. We've taken away the ordinary burden of proof all because the government did wrong. You see, that's, isn't that the big problem with reading the statute the way you want? Are you talking in the context of a second petition? I'm talking in the context of a 20, yes, a second petition. The evidence, the Brady evidence, real exculpatory Brady evidence is withheld until after the first petition. And I appreciate the distinction. I think that it can be viewed as a harsh result, but I, but the fact that the government was involved, I don't think sufficiently distinguishes it. There are a lot of harsh results that could be argued from ADPA generally, including the statute of limitations and 2244. Well, the question is, is it the harsh result that Congress intended? That's my question. We urge that it is based on not just the language, but the fact that Brady is so clearly described in that language that that's what they intended. They couldn't have overlooked. I'm just thinking that you could get to a point where you really have a constitutional problem. Are you talking about suspension? Yes. Your Honor, there are many limitations on habeas, and this is but another one. And those have all survived suspension. It's very clear they can limit it. Statute of limitations, 2244 and other aspects other than the one discussed here have all passed muster. Okay. Thank you for your argument. Thank you. I'd just like to briefly address two points, both related to the statute's text. One question being, doesn't the statute clearly contemplate a Brady claim? Isn't that the point? And I think it's not, clearly. The statute imagines much more than a Brady claim. It imagines IAC claims. It imagines freestanding actual innocence claims. And that makes sense to treat those kinds of claims differently, because those are claims the State cannot protect itself against. A new witness comes forward that no one was aware of. New DNA testing becomes available that was not previously available. The State is at a disadvantage because time has passed. But they could never have protected themselves from that eventuality, unlike a Brady claim. And on the second point, to Congress's intent, the legislative history about EDPA is — about this part of EDPA is described briefly in Lopez. And the Lopez court notes that there is very little, that it is a paragraph or two, and that it appears to be geared specifically to streamlining the death penalty procedures. There is no suggestion that what Congress was trying to do was to cut off claims implicating withholding by the State. Can I ask another question about — has Ninth Circuit already decided this issue in Buenrostro? It has not, Your Honor. Buenrostro dealt with an IAC claim. Yeah. And so they said that because the IAC claim came into being, was ripe at the time of trial, Mr. Buenrostro's claim was second or successive. But Gage tells us, and there are reasons to interpret a Brady claim differently, that it does not ripen at the same point. So Buenrostro does not foreclose this question. It doesn't help you that it doesn't foreclose it. I would agree with you there. There are ways that I would have written Buenrostro differently had I had the opportunity. But, no, it does not foreclose us. All right. Thank you both for your argument. This matter will stand submitted.
judges: Callahan, Bea, Restani